IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANE DOE, )
)
    Plaintiff, )
)
    v. ) Civil Action No. 10-1111
)
G.L., )
)
    Defendant. )

MEMORANDUM

Gary L. Lancaster,                                     January 25, 2013
Chief Judge

This was an action in tort. Plaintiff, proceeding as Jane Doe, alleged that defendant, proceeding as G.L., transmitted an incurable disease to her during their four-and-a-half-year relationship. G.L. counterclaimed asserting that Jane Doe was the one who infected him with the disease. The case was mediated, settled, and closed within four months of defendant being served. [doc. nos. 6, 21].

About two years after this case was closed, movant, Joan Orie Melvin, filed a motion, under seal, seeking to publically disclose Jane Doe's real name. [doc. nos. 4, 5, 23, 24]. The Pittsburgh Post-Gazette then filed a motion asking that Melvin's motion, and all related papers, be made public. [doc. nos. 35, 36]. For the reasons set forth below, we grant Melvin's motion, and order that docket numbers 5, 30, 31, 32,

and 33 be unsealed and that this matter be captioned Jamie Pavlot v. Gregory Luke Larkin. This ruling makes the Post-Gazette's motion moot, and we deny it on that basis.

## I.    FACTUAL BACKGROUND

The complaint in this action sets forth the circumstances under which Jane Doe was allegedly unwittingly infected with a disease during a more than four-year relationship with the defendant that occurred between July of 2004 and January of 2009. [doc. no. 1]. The day after filing this complaint, plaintiff filed a motion seeking permission to proceed pseudonymously, setting forth the applicable legal standards, and explaining how each factor weighed in favor of her request under the circumstances of this case. [doc. nos. 2, 3]. Plaintiff also sought to protect the identity of defendant, even though he had not yet been served. [doc. no. 3 at 4 n.1].

By order dated August 25, 2010, we granted that motion, sealed the affidavit that contained G.L.'s and Jane Doe's true names, and allowed the case to proceed under the caption Jane Doe v. G.L. [doc. nos. 4, 5]. Upon appearing, defendant denied the allegations of the complaint and counterclaimed alleging that Jane Doe was the one who infected him with an incurable disease. He did not object to or seek to

2

modify the court's order allowing both parties to proceed anonymously. [doc. no. 8].

This case was promptly settled and administratively closed. [doc. nos. 6, 21]. It remained dormant for two years until Melvin sought to intervene for the sole purpose of unsealing the true name affidavit. Recognizing that any filing she might make in support of her request would inevitably reveal Jane Doe's real name, Melvin sought leave from this court to file her supporting papers under seal. [doc. nos. 23, 24]. We granted that request, and entered an order on January 9, 2013 permitting Melvin to file her motion and brief under seal in order to protect Jane Doe's identity until which time the court could rule on the propriety of allowing Jane Doe to remain anonymous. [doc. nos. 25, 30, 31]. All related oppositions were also filed under seal. [doc. nos. 32, 33]. Even though G.L.'s real name would also be revealed were we to grant Melvin the relief she requested, G.L. has not filed any position on this motion. After Melvin, Jane Doe, and the Commonwealth filed their briefs, the Pittsburgh Post-Gazette filed a motion to intervene and to vacate the court's January 9th order which allowed these briefs to be filed under seal.

## II.  DISCUSSION

 We address Melvin's motion first because deciding whether to maintain the confidentiality of Jane Doe's name could be dispositive of the Post-Gazette's motion.  In this instance, because we find that Jane Doe's identity should no longer be kept confidential, our ruling does, in fact, make the Post-Gazette's motion moot.

 As an initial matter, we find that Melvin has standing to intervene in this action in order to challenge the August 25, 2010 order sealing the true name affidavit.  Article III requires that Melvin show that she personally has suffered some actual or threatened injury that can be fairly traced to the court's action and is likely to be redressed by a favorable decision.  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777 (3d Cir. 1994).  Here, Melvin challenges this court's order sealing the true name affidavit on the grounds that it violates the public's common law right of access to judicial records and interferes with her constitutional right to confront witnesses against her during her criminal trial.  The Court of Appeals for the Third Circuit has routinely found that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to judicial proceedings. Id.  The fact that Melvin seeks access to this judicial record for her personal use in her criminal trial does not prevent her

4

from asserting and relying on the public's common law right of access to judicial records. Leucadia v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 167-68 (3d Cir. 1993). Because this court's August 25, 2010 order interferes with Melvin's ability to access the true name affidavit for use in her criminal trial, Melvin has asserted the required "injury in fact" and has met the standing requirement. Pansy, 23 F.3d at 777.

We also conclude that Melvin has met the requirements set forth in Federal Rule of Civil Procedure 24(b) governing permissive intervention. That rule allows "anyone" to intervene in a case who "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b). The Court of Appeals for the Third Circuit has definitively held that this rule is appropriately used to enable a litigant, who was not an original party to the action, to challenge protective or confidentiality orders. Pansy, 23 F.3d at 778. Under such authority, we find that Melvin has met the requirements of Rule 24(b), and we grant her request to intervene in this case.

Therefore, we move to the merits of Melvin's motion which seeks to modify our August 25, 2010 order so that the true names of Jane Doe and G.L. can be made available to the public. The public right of access to judicial records is "beyond dispute." Pansy, 23 F.3d at 780-81; Bank of Am. Nat'l Trust and

Sav. Ass'n v. Hotel Rittenhouse Associates, 800 F.2d. 339, 343
(3d Cir. 1986).  A true name affidavit is a judicial record to
which a presumptive common law right of public access attaches
because it was filed with the court.  United States v. Wecht,
484 F.3d 194, 208 (3d Cir. 2007).  However, the public's common
law right to access judicial records is not absolute and must be
balanced against the need for confidentiality with an aim to
determining whether the litigant seeking confidentiality has a
reasonable fear of severe harm that outweighs the public's
interest in open litigation. Doe v. Megless, 654 F.3d 404, 408-
09 (3d Cir. 2011); Wecht, 484 F.3d at 208.

        Where, as here, we are considering a motion to modify
an order permitting the parties to proceed pseudonymously, we
must use the same balancing test that was applied in determining
whether to enter the order in the first place, while
additionally considering the original parties' reliance on the
order. Pansy, 23 F.3d at 790.  However, a party's reliance is
subject to the knowledge that orders may always be modified by
the court.  Id.  Moreover, we must also recognize that since the
original order sealing the true name affidavit was entered in
2010, the Court of Appeals for the Third Circuit has now
explicitly accepted the general principle that a plaintiff's use
of a pseudonym "runs afoul of the public's common law right of
access to judicial proceedings." Megless, 654 F.3d at 408.

In this case, in addition to reliance, we must consider the following factors in deciding whether to modify the order that permitted the parties to proceed anonymously: (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided and the substantiality of these bases; (3) the magnitude of public interest in maintaining confidentiality; (4) whether there is an atypically weak public interest in knowing the litigant's identity; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to her refusal to pursue the case at the price of being publically identified; (6) whether the party seeking anonymity has illegitimate ulterior motives; (7) the universal level of public interest in access to the identities of litigants; (8) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (9) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated. Megless, 654 F.3d at 409-10 (explicitly endorsing the factors set forth in Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 467 (E.D. Pa. 1997)).

The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Pansy, 23 F.3d at 790. Once that is done, we must then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order. Pansy, 23 F.3d at 790.

Melvin seeks to unseal the true name affidavit in order to exercise her constitutional right to confront witnesses against her in her criminal trial, and to protect the public's common law right of access to judicial records. Therefore, we must go on to balance the factors set forth above to determine whether to modify our August 25, 2010 order sealing the true name affidavit. Upon balance, we find that although the first and sixth factors weigh somewhat in favor of continued confidentiality, the remaining factors weigh in favor of disclosure. In addition, although the parties undoubtedly relied on the order sealing their true names, that factor is not dispositive. Pansy, 23 F.3d at 790. As such, we conclude that good cause no longer exists to maintain the true name affidavit under seal and that Jane Doe has failed to demonstrate that she has a reasonable fear of severe harm that outweighs the public's interest in open litigation.

As to the first factor, there is no indication that Jane Doe has publicized her involvement in this case. Nor is there any evidence under factor six that she had improper motives in seeking anonymity when she originally filed this case. However, although we stop short of labeling Jane Doe's original request improper, we do recognize that at the time she filed this lawsuit she was already involved in the criminal investigation of Melvin, and was a public employee serving as Chief of Staff to a Pennsylvania State Senator, who is Melvin's sister. As such, she likely feared that any filings she might make in this case would garner more public interest than would typically be expected. Although this motive is not necessarily illicit, it falls short of an objectively legitimate need to proceed anonymously. Lastly, the reliance factor does weigh in favor of maintaining confidentiality. However, as stated previously, this factor is not dispositive because parties are charged with the knowledge that any court order is subject to modification. Overall, these three factors weigh slightly in favor of refusing to modify the August 25, 2010 order sealing the true name affidavit.

By comparison, the remaining factors weigh heavily in favor of granting Melvin's motion and unsealing the true name affidavit. Jane Doe's only interest in maintaining her anonymity is to avoid the purported embarrassment and stigma

9

associated with the disclosure of details regarding her medical and sexual history. However, on that point, the Court of Appeals for the Third Circuit has stated that "embarrassment or economic harm is not enough." Megless, 654 F.3d at 408. Instead, a litigant must show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." Id. (citing Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1043 (9th Cir. 2010)). Our court of appeals has listed the areas where courts have allowed parties to proceed under pseudonyms as involving "abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." Megless, 654 F.3d at 408. Jane Doe's case involves none of these circumstances.

Moreover, in considering this asserted interest in maintaining confidentiality, we note that Jane Doe voluntarily placed details of her personal life at issue by filing a civil lawsuit in federal court and availing herself of this court's jurisdiction, procedures, and remedies. G.L. took the same action by filing a counterclaim against Jane Doe. Finally, although Jane Doe contends that maintaining her anonymity will encourage other victims to assert their rights, it is important to recognize that this was nothing more than a civil case seeking monetary relief in tort for damages arising out of a consensual sexual relationship. The court struggles to find an

overarching public interest in protecting private litigants'
rights to sue each other in federal court under such
circumstances. Weighed against this is the public's interest in
access to judicial records and to information regarding a key
witness in a highly publicized criminal case against a State
Supreme Court Justice, which both heightens the universal level
of public interest in access and gives the public a particularly
strong interest in knowing the litigants' identities in this
case.

On the final factor we can ascribe no ulterior motives
to Melvin's opposition to maintaining anonymity. As to this
point it is important to note that Melvin only took action to
unseal the true name affidavit when it became evident that Jane
Doe would testify against her in state court, at which point
Melvin's constitutional right to confront witnesses against her
was implicated. On balance, under the current circumstances, we
find that the public's right of access to information regarding
such a witness now outweighs Jane Doe's personal preference to
maintain secrecy, and that Jane Doe has failed to establish that
she will suffer "severe harm" in the absence of confidentiality.

Because the balance now weighs in favor of disclosure,
we grant Melvin's motion to unseal docket entry 5, the true name
affidavit. Doing so will caption this matter Jamie Pavlot v.
Gregory Luke Larkin. Because the only reason we sealed Melvin's

11

motion, and the related oppositions, was to protect the confidentiality of the parties' names until we could rule on that exact issue, and because the names have now been disclosed, we vacate our January 9, 2013 order and unseal docket entries 30, 31, 32, and 33. As such, the Post-Gazette's motion is moot.

### III. CONCLUSION

For the foregoing reasons, Melvin's motion to intervene and to unseal the true name affidavit is granted, and the Post-Gazette's motion to intervene and unseal Melvin's motion, and all related briefing, is denied as moot.

To be clear, our ruling should not be interpreted as making any statement as to whether any information related to this case, and in particular the true name affidavit itself, should be deemed relevant and/or admissible in the criminal trial against Melvin. Such rulings are within the sole discretion of the Court of Common Pleas judge presiding over that trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANE DOE,                          )
                                   )
            Plaintiff,             )
                                   )
      v.                           )
                                   )
                                   )   Civil Action No. 10-1111
G.L.                               )
            Defendant.             )

## ORDER

AND NOW this 25th day of January, 2013, upon consideration of the Sealed Motion to Intervene and to Unseal Jane Doe's True Name Affidavit by Joan Orie Melvin [doc. no. 30], IT IS HEREBY ORDERED THAT the motion is GRANTED;

IT IS FURTHER ORDERED that the Pittsburgh Post-Gazette's motion to intervene and to vacate [doc. no. 35] is accordingly DENIED AS MOOT.

BY THE COURT,

_____, C.J.

cc:  All Counsel of Record